Your Honor, I intend to address primarily the 1324 brings two issues this morning. Of course, I'd answer any questions your honors have as to the other issues. What we're asking the court to do is to clean up the law as to what the brings two offense is, when does it begin, when does it end, is it completed at some point later on or is it completed at the border as seems to be the case in the Gonzales-Torres case. And now I'm going to turn it over to Mr. Lopez to address the 1324 brings two issue. Isn't that question resolved by Ramirez-Martinez? I don't think so. I think that the Ramirez-Martinez case, basically what we're talking about is one paragraph in Ramirez-Martinez that talks about. That's all it takes. Well, it's all it takes if in fact it's a holding. It's like a bullet, you know. If it's well aimed and it hits a bullseye, you know, that's all you need. No, I agree that there's no length requirement as to whether or not a particular portion of an opinion is the holding. But in this case, we have a single paragraph that was then followed by a several paragraph discussion in which the court analyzes the question of whether or not Mr. Ramirez-Martinez acted before the offense was completed, i.e., whether he acted before the individuals crossed the border. And what you have is an ultimate conclusion that because Ramirez-Martinez met these individuals at a location very close to the border, that the inference could be drawn. In fact, the jury did draw that inference, according to the opinion, that he acted prior to their entry. The lengthy passage which you refer to starts with moreover, which sounds to me like an alternative holding. And you're familiar with our in-bank decision in Barapin v. Anamodo, where we discuss the nature of dicta and what is a holding, what is dicta. And what we say there is that if the court addresses an issue that's actually presented to it, then it's a holding even though it might think it's unnecessary. I clearly could have skipped this paragraph and come to the same conclusion, but unnecessary doesn't help. Well, I understand that there are two competing definitions of dicta, and there's the unnecessary one, and there's also the one that Your Honor discussed in a couple of the concurring opinions. And I think that under that analysis, that this clearly isn't dicta for a number of reasons. Number one, it doesn't reflect any sort of consideration of the alternatives. It doesn't appear to be a portion of the opinion that the panel itself intended for subsequent panels to rely upon. And the reason I say that is that there's no actual discussion of the fact that the portion of Angwin that it relies upon was withdrawn. It was withdrawn two weeks before the Ramirez-Martinez opinion. I'm aware of that, but that just means they're wrong. Well, that just means they're wrong. It's just like misreading any other case or misreading any other authority. How you can say that this wasn't considered an alternative? They said, look, we considered your argument, and it is largely disposed of by Angwin. And then we're going to go ahead and cite the Second Circuit decision in Aslam, which is also wrong, which itself relies on Fifth Circuit cases that precede the amendment to the statute that change bring into to bring to. So the Second Circuit wrongly relies on out-of-date Fifth Circuit cases. And then we rely on Aslam, and we rely on Angwin, which is wrong. And we rely on a version of Angwin that no longer exists. So this paragraph has a lot wrong with it. I agree. But that just being wrong doesn't make something dicta, another holding. No, I agree. But the one paragraph that we're talking about never says we adopt the analysis from Angwin. It never says that we adopt the rule in Aslam. I've got the whole paragraph right in front of me. The paragraph, the sentence that Your Honor refers to, Ramirez's argument is largely disposed of by our decision in Angwin. It doesn't say we're adopting that analysis. The final sentence just says what the, what we relied upon in illuminating this idea is the Aslam case, but it never says we adopt the Aslam case. When the Court talks about what it's actually holding, it goes on to do that in the next paragraphs where it reaches specific conclusions as to Mr. Ramirez-Martinez's conduct and how. What would you expect him to say in any event rather than moreover? I think moreover is, doesn't help me, but doesn't change the fact. If you could edit it, you would. Yes. You would definitely change it to, it doesn't, in any event, it doesn't matter because. Right. Yeah. But the thing is, is that the one paragraph that talks about Angwin and Aslam does not contain any language such as we hold, we adopt that, we conclude that based upon the fact that these aliens were going to Los Angeles rather than to some location in Ocotillo where they're ultimately found. You know, in the last case, Mr. Tanaka wanted the district court to say magic words. Now you are arguing that we need to say magic words in order to make something as thick as a holding. Well, I don't think that it's, it's a question of magic words. I think that we have a paragraph that states what the analysis was. Don't you think we need to take this case in bank and resolve the tension between this case and, and, and, and, and. Martinez-Ramirez. I'm sorry? Martinez-Ramirez. You know, I get these cases all mixed up. This is a Judge Rawlinson opinion. Gonzales-Torres. Thank you. Gonzales-Torres. Gonzales-Torres, which clearly is right. I mean, clearly thought about the, you don't think that this is just one of those things we can't handle ourselves? Well, I think that if, if Your Honors really believe that that one paragraph is a holding of the case, then yes, it should go on bond. But I don't think that it is a holding. I don't think it's a holding for all the reasons that Your Honors discussed in your concurring opinions. And I think that it doesn't. I misread my concurring opinions, but go ahead. And it doesn't actually have. I'm not going to have the job of explaining to Judge Trott why we, why we dissed his opinion. Well, I, I didn't know that I wasn't going to get Judge Trott when I wrote this brief. I know. I understand. Unfortunately, I have to explain to him. You know, you said it there, but you didn't mean it. Well, he may not want to talk too much about that opinion, given that he cites withdrawn authority. So he may just let that one slide. Withdrawn circuit authority and incorrect out-of-circuit authority. It's a lot of wrongness to pack into a single paragraph, I admit. But the single paragraph doesn't say anything about it being a holding. If they had concluded that, you know, there was evidence showing that the individual was born in Los Angeles and therefore they hadn't reached the immediate destination, then I wouldn't have this argument. But it doesn't say that. Counsel, where does that language, immediate destination, first appear? It first appears in the Angwin, the withdrawn Angwin opinion. Is there anything at all in the statute about immediate destination? No. There's nothing in the statute about immediate destination. And in terms of the jury instruction that the district court gave, the district court actually went beyond immediate destination and defined it in such a way, I think, to direct a verdict against Ms. Lopez by saying that, look, if you're just at a place where you're resting or waiting for transportation and so on and so forth, that that isn't the immediate destination. I mean, the instruction strongly suggested to the jurors that where they were waiting, and they were there for a whole day. They were waiting by the side of the road in Ocotillo. They strongly suggested that that wasn't the immediate destination. And that's, you know, those are definitions that were. There was certainly evidence in the record under which the jury could have convicted on the alternative theory that she was involved even before they were over the border. The problem is since they had this instruction, it is at least possible and perhaps likely that they were convicted on the alternative theory that they never reached a destination. Well, I agree that they almost certainly convicted based upon the immediate destination theory, particularly since they asked the jury. Well, they have her statement. They have the fact that she knows what this guy looks like. They must have met at some point before. And they have the fact that she bought the car before they crossed the border. So unless it was a big coincidence she was going car shopping just before this happened, which could be, I'm not saying couldn't be. And on top of that, she had to travel some distance to pick up that exact car. That's true. But I don't think that that fact is as persuasive as all that. I mean, number one, she did get the car on May the 28th and the arrest was June the 1st. It's not altogether clear that she got the car before the entry because these individuals walked I think for two days and two nights and then they had to wait because, you know, someone else was supposed to pick them up. Someone else came and picked them up and, you know, that person got arrested. And so the rest of the group remained in hiding for an entire additional day. So it's not just the fact that she wasn't the person there when they crossed. She also wasn't the person that was supposed to pick them up initially. In addition to the fact that there was some other guy that came to pick them up, that person had this code, I think it was F12, that was used to identify people who were actually involved in the offense. And the guy that came the first time, a day before Ms. Lopez did anything in the case, that guy had the code. Ms. Lopez didn't have the code. So I don't think that a jury could have found beyond a reasonable doubt that she acted before the entry. In fact, the district court even said that it wasn't even clear that she got the car before the entry. He said, and it's at 190 of the excerpt of record, that the registration was, quote, about the time, close quote, of the entry. I mean, we're really not in a position to review for substantial evidence the alternative holding. I mean, the point is that the jury was instructed it could reach the result simply by concluding that they hadn't reached the destination. And we have to assume that they could have gone that way and they did go that way. Now, if the alternative guard were the only one in the record and that's the only instruction, they would have to think long and hard as to whether or not there was enough evidence or not. But it doesn't matter. Well, if you stick with the immediate destination theory, then there is sufficient evidence on the immediate destination theory. But I still think, no matter how you come out on that, that the jury instruction here is still wrong because of the way that it defines immediate destination. I mean, immediate destination came out of the Anglin case. I did a Westlaw search. I think that there are only – I think you misunderstood. I think what I said is the jury had an instruction that allowed them to go to convict under the immediate destination theory, and that sort of – we can't say, well, you know, we don't have to consider that an argument because they surely committed on this alternative ground, as I guess happened in Ramirez-Martinez itself. We have to confront the main question. Right. Yes, you do. If the offense was not complete under the jury instruction until they reached the immediate destination of L.A., let's say, then was there a completed offense here at all? No. If – They never – I'm sorry. I interrupted you. Well, they never got to L.A., right? Right. Well, they never even got to El Centro, which is what the city that the jury questioned to the district court judge focused on. And that's one of the alternative arguments that we've made is that if we take Ramirez-Martinez at its word and the offense isn't complete until they reach their immediate destination, well, they never reached it. So there's no completed offense, i.e., there's no substantive offense committed, so that if Ms. Lopez could be prosecuted for anything, it would be only an attempt. But she wasn't charged with an attempt. What if they say we're going to come in across the border not far from San Diego, but our immediate destination is Maine, and they're never going to make it? Vancouver. Yeah, well, they might not even be brought to – There's never a completion of the offense of bringing them to the U.S. as they traverse the country from San Diego. Right. If that's the case, then they would have to be prosecuted for an attempt. And the other thing that's important is this immediate destination stuff isn't in the indictment either. So Ms. Lopez is preparing for a trial. She doesn't know if the immediate destination is going to be El Centro or if it's going to be Los Angeles. So, you know, this made-up element, which isn't in the indictment at all, creates serious notice problems as well. But I did make an alternative argument in the briefs, which is that if we stick with the Ramirez-Martinez approach and the offense is not complete, then she could only have been convicted of an attempt. And because she wasn't charged with an attempt, the Court should nonetheless find that the evidence here was insufficient. Your primary argument is that the immediate destination language in Ramirez's is a dicta and that we should say what they were already in the U.S. when she first got to them. Yeah. I think that you should hold that that portion of the opinion is dicta and that the offense is committed at the border, as was the case in Gonzales-Torres, and that if there was evidence to show that Ms. Lopez acted before the entry into the United States, only then could she be convicted. And I think on this record there isn't sufficient evidence to support that conclusion. Let's say a person, and this doesn't relate to this record, but I'm trying to understand the right rule or what it should be. Let's say a person agrees with a smuggler, I'm going to pick up illegal aliens 10 miles north of the border in the middle of a remote wilderness. But they then don't go to that place until after the aliens are in the U.S. But they reached agreement to do the pickup before the smuggler crossed the border. Is that then they've acted before the offense is complete, right? I think that's a closer case because there's nothing but the agreement. I think that in Ramirez-Martinez and in the Angwin case, the Angwin 2, the one that actually counts, that there is evidence from which you conclude that the individuals did things before the entry. I think the defendant in Angwin arrived within minutes of the aliens getting to the drop-off spot. And then the defendant in Ramirez-Martinez actually was already at the drop-off spot when the aliens arrived. And that guy, I think, had come all the way from Fontana. So there was evidence to show that not only the agreement, but actual actions on the part of those defendants prior to the entry. I think that, Your Honors – But wouldn't the entry of – would the entry into the agreement be an action, too? Well, I think it's a closer case. I don't want to concede that the agreement itself would be sufficient, but there certainly is an argument that it would be sufficient under those circumstances. And that portion of Angwin that talks about the agreement and the actions before the entry is the part, I think, of Ramirez-Martinez that's binding. Okay, but you would say we don't really need to get into those types of issues here because we have to deal with the jury instruction. Well, I think you could adopt the alternative argument with respect to she needed to be charged with an attempt rather than a substantive offense and that she should get a Rule 29 on the brings to accounts because of that. Or you could address the jury instruction issue. I think under any circumstances, the jury instruction – Let me spin out that argument. If you win on Rule 29, is there a retrial? No. Because there was insufficient evidence. Right. So that's the argument you really want to push, right? Yes. That would be only to the brings to accounts. There are also transportation accounts, which I think that's what her conduct – We have only been talking about the brings to accounts. That's correct. We have only been talking about those. So if you win – Because she didn't appeal the transportation – she didn't appeal conviction on transportation, correct? She did not file a sufficiency claim as to that. I think that she has a Miranda claim and a Crawford claim, which would go to all the accounts. But we've been talking about the brings to. Unless Your Honors have any questions, I'd like to reserve the remainder for rebuttal. Thank you. Thank you, Mr. Wojciech. And we'll hear from the government. Good morning, Your Honors. May it please the Court. Christopher Tenorio for the United States. The only question in this case of relevance was whether the defendant appellant aided and abetted an offense. And in getting to that question, just like any aiding and abetting theory, is whether that action was done before the offense was completed. There is no new insertion of a new element in this case. There is no creation of an independent – Well, the jury was instructed that the offense was not complete until they reached their destination in the United States. They actually weren't instructed that. They were said that they could find that. What they were instructed was an alien who, after crossing the borderline – What is the difference between they were told they could find that and they were instructed? They were given a definition of how they could find whether a crime was completed or not. Was it in the part of the transcript where the court said, I'm now going to instruct you on the law? Yes, Your Honor. Okay. Just for future reference, you know, everything that comes between that and the jury, you know, the judge completing that, is an instruction. I understand that, but – Let's not mince words here. No. The jury is told a definition. That's an instruction. I understand. And maybe what I misunderstood – Why were you quibbling with me? What I misunderstood was whether they instructed as to the law or to the facts. And my point was that he did not say – What do you mean, instructors of the facts? My point was that the court did not – What do you mean by instructors of facts? The court said, this is what happened. You know, if the court did that, then the court would be taking an issue away from the jury. Right. And we'd have reversible error on that ground alone. Absolutely. And that's why I'm saying that did not happen. Nobody claims that that's what happened. And that's why I misunderstood your question. That's what I thought you were implying. And forgive me, I just misunderstood the question. I don't understand how you could have misunderstood the question. I'm sorry. I'm totally confused. I asked you whether the jury was instructed that the crime could not be completed until there is a destination. Yes. And you gave me this quibble about this was not an instruction, this was a definition. That's correct. Now, let's try the case. Yes, Your Honor. Okay. You've been there where the judge gives instructions, right? Yes. I was just thinking – And where the judge say, oh, these are instructions to the facts and these are instructions to the law. You ever heard the judge do that? No, Your Honor. But what I was – what I was preceding was the argument that it was a directed verdict, that the court directed a verdict. And I disagreed with that. And that's why I was probably thinking one step ahead. Let me instruct you something. Yes, Your Honor. It's important to listen to a question. Okay. I understand. And listen to what the court is asking and not answer something else. Now, let me ask the question one more time. Okay. Was the jury instructed that the crime was not complete until there is a destination? Yes, Your Honor. Okay. Could the jury on this record have convicted on that theory? Could they have convicted on the theory that he had not reached his destination? Yes. Yes, Your Honor. Because the crime was still ongoing, and therefore, even if she was recruited after they crossed the border, this was still an ongoing crime until they reached Los Angeles. Could the jury have convicted? Yes, Your Honor. Okay. What would she have aided and abetted in that case? If it wasn't complete, how is she guilty of aiding and abetting? Your Honor, our position is that she was aiding and abetting the principals who were bringing the aliens to their final destination. No, I understand that. But I thought to be guilty of aiding and abetting an offense. Forget this offense for a moment. I thought that to be guilty of aiding and abetting an offense, the offense had to be done. In other words, the offense had to be committed. And then we have the question, did someone aid and abet it? If the offense was never completed, how can someone be guilty of aiding and abetting it? I believe that what has been recognized is that it is being committed as she is assisting. It's a continuing offense, so she's assisting as it's being committed. Well, I would understand if someone said it's an offense when you cross the border and then it's a continuing offense until you get to your final destination. But that's not exactly what the instruction here said, and that's not exactly what Ramirez said. It seemed to say the offense isn't complete until you get to your destination. And I think that's true. I'm sorry? I think you heard the question. What is the answer? No, I thought he had something to follow up. It is the same as here. I believe that the facts are the same in this case as in Ramirez-Martinez. We would not have to be concerned with the immediate destination if we were charging the principal, the one that physically accompanied the aliens across the border. In that case, if we were prosecuting that principal, then we would not be looking to aiding and abetting. We would not have to be concerned about the immediate destination. I thought in Ramirez the aliens made it to the destination. I'm sorry? I thought that in Ramirez the aliens did make it to the destination. No, that's not my understanding. That's not my understanding. My understanding was that they arrested the defendant as he was in the process of driving them to their immediate destination. Just like here? Yes, Your Honor. Yes, Your Honor. And the court in Ramirez said, well, the offense isn't complete. Correct. And therefore, because it was not yet complete, she was aiding and abetting. All right. So I still don't understand your answer to Judge Gould's question. Since this offense wasn't complete either, what was she convicted of? There was no completed offense. She was aiding and abetting a continuing offense. Where does it say continuing offense? I mean, where was the charge that this was a continuing offense? So this was a offense that's completed when they cross the border, and then it continues as an offense even as they travel to the region destination? Yes, Your Honor. Yes, Your Honor. But don't you find yourself in a real problem there because then you've got words like final destination? Well, I do agree. And I think that what happens, I think the distinction between Angwin 2 from Angwin 1 is that they probably foresaw that problem of the immediate destination language and clarified it. What they said was if there's, you know, if there are those situations where the transportation is so remote in time or geography that the jury could find that there was no aiding and abetting, then they're not guilty. They said that where? In Angwin 2, the second one. Okay. But the facts in Angwin were completely different because in Angwin there was substantial evidence that there had been some sort of agreement before because Angwin met those aliens within minutes of them crossing the border. Here we've got a three-day lag of time. I understand.  But I think that that is inconsequential to the finding. At no point either in Angwin or Ramirez, contrary to the opposite argument, did they say we're doing this because the argument was before their entry. In fact, they would not have had to look into the issue of aiding and abetting after entry if they decided that there was action before the entry. I think that that's inconsequential. It could be a factor that can be considered as a defense, but it's not necessary. Let's say this were a principle. This was not an aiding and abetting issue. And let's say that, in fact, what you're prosecuting here is the driver of the car, and the driver of the car had, in fact, driven these people across the border. I mean, this is contrary to exactly what happened here. But let's say the same guy. There's a guide, and the guide walked them across the border, and then there was a vehicle there, and he got the key. I mean, waiting for them, got the key. He's now driving from Los Angeles. Would you be able to have gotten a conviction against him? Yes, Your Honor, because the actual crime of bringing the aliens to the United States has not yet been completed. How do you reconcile that with your view of that paragraph that we discussed in Ramirez-Martinez, where they say, In that case, we embrace the concept that the person could be guilty of aiding and abetting the crime of bringing them to the United States. And eliminating this idea, we rely on the Second Circuit opinion in the United States v. Ashland, which holds that the crime of bringing the aliens is not complete until the alien reaches the immediate destination. So how could you get the driver under this theory? Because they hadn't reached their immediate destination. The crime is not complete. Well, I don't see the distinction between that. I see that, as it recognizes Ramirez-Martinez, it's part of the whole concerted action of bringing them from outside the United States to their immediate destination. The crime is not complete. The crime is not. I mean, that's what we said there. If you really treat that as a holding, then I don't see how you're not stuck. And in most cases where you're dealing not with aliens and abettors, but we're dealing with principles, how you can ever commit somebody for bringing somebody across the border unless you can prove that they have reached their immediate destination. I see what you're saying. I think that what Ramirez-Martinez recognized was the government's argument that it is both complete upon entry and a continuing offense. It doesn't say anything about a continuing offense. It says it's not complete until you reach your immediate destination. It's a pretty plain. Where is the word continuing offense? And where does it say it's both complete and a continuing offense? And where have you ever seen a case saying that something is both complete and a continuing offense? The way I see Ramirez-Martinez, Your Honor, it says, and this is on page 912. Yeah. The first full paragraph in the middle of the page, second sentence, however, according to the government, a bringing to offense, although complete once the alien crosses the border, continues until the alien reaches his immediate destination inside the United States. Then the court goes on to say because he had not reached his immediate destination, the bringing to offense was continuing and Ramirez's subsequent actions subject him to criminal liability as a principle without relying on accessory liability. I think the ---- Okay. So the government argues it's both complete and continuing. The court says it's continuing. It doesn't say it's complete. It doesn't say we agree with the government. If anything, it lays out the two points the government makes and adopts the one. And then it goes on in the next paragraph to explain why. It relies on angle 1-1 and ask one. Right, right. Well, I think maybe the distinction can be when the theory of liability is aiding and abetting as opposed to being the principle. If it's a principle, it's as soon as it comes into the United States. And if it's aiding and abetting, you have to determine whether or not the crime is complete after they enter the United States. Well, how do you come up with that? So the crime is complete one way for purposes of principle liability, another way for purposes of special liability? Are you just making these things up as you go along? No, Your Honor. I think that it's because ---- Do you have an authority? Do you have any case anywhere in the history of the common law where something like this has ever happened? Well ---- Go back to, you know, to ---- What I'm looking to ---- To the battle of Hastings, if you want. What I'm looking to is the explanation of Congress's intent when they, in 1986, when they expanded the liability, the scope of the liability from that statute. They were specifically going after the ---- And they said we're going to have the crime be complete for principles at one point in time, but for accessories, the crime is going to be complete at a different point in time. No. What they say is we are, we are ---- I didn't see any either. No. I must go first. No. I think what they're doing is they're saying this statute is meant to apply to all the people along that line. And I think that Ramirez-Martinez came in and said this is how we're going to do it. We're going to say, we're going to look into this concerted effort, this concerted action, between these persons that agree until this person gets to his immediate destination. This is pretty creative. Well, I ---- It's almost as creative as page 21 of your brief. Do you have your brief there? Yes, Your Honor. Does Mr. Haynes review this brief? Yes, Your Honor. Tell him I'm disappointed in him. And ---- You know, Lopez has further narrowed when he, when she states that Angwin I was withdrawn, thus implying that it is of no precedential value. Right. You think we amended the opinion just for the fun of it? And, you know, the prior version of the opinion is still binding, even though it was amended? My point was that it was amended and not withdrawn. Lopez said, consistently says ---- And you think that makes a difference? Well, I do, and I do to the extent that Angwin ---- There's only one Angwin opinion. Right. There's not two Angwin opinions. There's an earlier version of the opinion. Right. And then it's amended by having another version of the opinion where the key paragraph is changed or deleted. And the language on which you rely is now gone. And I am just astonished. I mean, it's just beyond belief that somebody who went to law school and practices law in the circuit and before this Court would argue that the portion of an opinion that has been amended out of existence continued to be by imprecedent. And I hope you will tell Mr. Haynes ---- I will. ---- that if he signed off on this page, I am personally very disappointed with him. And I hope that he will take the trouble of writing me a note and explaining what on God's earth he had in mind in approving this page. Maybe you can explain it to me. You're in my ---- In any event, I would like to hear from Mr. Haynes. Okay. He's a very fine lawyer, and I've seen him many times, and I'm ---- I think he must have nodded when he read this page. If I can ---- But you drafted it. Yes, Your Honor. Do you truly believe that a part of an opinion that is superseded by a later version of opinion is nevertheless authority? When that superseded opinion, Your Honor, is consistent with the first one, I do not see that there is any distinction between Englund and Schumer. Why don't you start with a yes or a no? Yes, Your Honor. That is correct. Okay. So we have a paragraph in an earlier version of opinion. Yes. There's then a subsequent version of opinion, specifically amendment ---- amended to delete that paragraph and substitute something else for it. Right. And in your view, the earlier paragraph, the one that was deleted, is ---- continues to be precedential. No, Your Honor. No, I do not. I do not. That's what you're saying on page 21 of your brief. And I ---- It's a ---- I'll see it on ---- That's implying that it is of no precedential value. You take defense counsel on for suggesting it doesn't. To me, that says that you think it does. No. Is there a misstatement in that page of the brief that Mr. Haynes, you say, has revealed? It was an inarticulate expression by myself, Your Honor. Why don't you explain to me what it is you really meant? What I meant to say that it was error that Lopez said that the ---- that the England one was withdrawn. My understanding is that it was amended versus withdrawn. But I understand. That's your ---- that was an error to say it was withdrawn. Maybe it was and maybe it wasn't. But then you have a second part of the sentence. You're not just quibbling with the use of the word withdrawn, something else. You say, thus implying that it is of no precedential value. I understand that is wrong. You don't think that suggests that you think it does have precedential value? It does imply that, Your Honor. Okay. In fact, it states that. Okay. Now, do you stand now today to believe that England one, the part that was amended out of existence, does have precedential value? Do you? No, Your Honor. I do not. Okay. So you put this in your brief. Yes. Mr. Haynes reviewed it. Yes. And now you're disowning it. No, no, no. I'm not disowning it, Your Honor. I'm not disowning it. It is wrong. It's written incorrectly, Your Honor. You're disowning it. You're saying it was wrong. Yes, I am. Absolutely. Okay. Okay. I am, Your Honor. And in fact, the larger point is that we are pointing to England two, and that, of course, is still controlling law. England two doesn't help you. It helps you not at all. In fact, by having withdrawn the part of the opinion that you like to rely on, it suggests that the England panel had doubts that that was correct. Well, I also think that England two adds to England one by providing that defense, which the district court adopted. They could have relied on the England two theory. Sure. Unfortunately, they were instructed the other way. Well, the fact that they could have convicted on this other ground doesn't help you any, because we certainly know they could have convicted on the ground that it was in England one that was removed. But the district court also adopted this language from England two. It said if you find that it was remote in geography or time, then they had not reached their immediate destination. So the district court was seeing England two as being consistent with England one, extension of that reasoning. And looking to Ramirez-Martinez, they also ---- I'm not sure what you just said. I'm sorry? How did the district court think it was consistent? Well, they mentioned both the immediate destination language and the England two language, that if an alien stops briefly at a location ---- Why don't we look at it? Why don't you just tell me what you're actually talking about? Okay. Do you have England two in front of you? Yes, I do, Your Honor. Okay. Just you tell me what you're pointing to there. What is it that helps you there? Or district court. I mean, just tell me what you're talking about. Okay. It is ---- Is it in the district court's instructions? Where are we looking? Yes, it is, Your Honor. Okay. Tell me where that is. Okay. The district court's instruction is at the excerpt on pages 169 to 70. 169 to 70. Okay. All right. And what lines are you then reading? Part of the instruction. I find the exact lines, Your Honor. The paragraph is on page 22 of 169, line 22. Thank you. Starting at 22. An alien who, after crossing the borderline, stops only briefly at a location not remote in time or location from the border for the sole purpose of resting or awaiting imminent further transportation has not yet arrived at his immediate destination in the United States. That helps you not at all. That helps the other side because what's telling the jury is the fact that they stopped briefly doesn't ---- they still haven't reached their immediate destination. Exactly. Exactly. And that was our contention as well. And that language comes directly from Englund 2. I understand. How does that help you rather than hurt you? My only point was that the district court looked, agreed, they believed that Englund 2 was consistent with Englund 1. It was an extension of that. By using that language that came from Englund 2, I don't believe that it helps you. I don't have any idea what you just said. Well ---- Why don't you point to me in Englund 2 what it is you're referring to? Is there anywhere in Englund 2 that the term immediate destination is used, counsel? No, Your Honor, there's not. The language that they use is on page 805, the end of that first full paragraph. Whereas the language from the instructions does, that you read to me, does use the word immediate destination. It does. It does. How is that inconsistent with Englund 2? Englund 2 provides the language, while there may be some circumstances where defendant's prearranged transportation of aliens is so remote in time and or geography from the alien's entry into the United States that no rational jury can conclude that the defendant aided and abetted the bringing of the aliens into the United States. Such circumstances were not here. So what the district ---- Where were you reading from? This is the end of the first full paragraph on page 805 of Englund 2. So, no, Englund 2 did not use the immediate destination language, but they expanded upon it. What I believe is they not expanded, they clarified it. And the district court adopted that language. It has nothing to do with immediate destination. What this says is if this is far deep enough into the country, maybe no rational jury can believe that this person is helping them. Then maybe those circumstances with no rational jury, they find themselves halfway to Maine, say that no rational jury could infer that this person was involved before they crossed the border. Right. In this case, it was close enough that the jury could conclude that the issue of whether Englund was involved in before they crossed the border. I think they're related in that both go to whether or not the crime was completed or not. If they were ---- This is a stretch, and I'm really surprised that the government wants to push this point, because it's ---- in most cases, this is going to hurt you. If you really push this point, most of the time you've got ---- you've got principles, not aidas and abeddas, and this is just a sinkhole for the government. I agree. I think it is difficult. What we are dealing with, Your Honor, is the ---- You know, you're agreeing with me, but saying something else. Don't at least agree with me. At least don't say you're agreeing with me. Well, I ---- What I'm saying to you, I think it's foolish. Do you agree with that, for you to take this position? I think it is a foolish position for the government to take. My point is, Your Honor ---- Do you agree with that? We did not agree with these jury instructions in the first place. We did not submit them. We did not ask for them. My position is that we're trying to defend the district court's decision to use them and say that they are not inconsistent with the law. Where did the district court get the instructions? They got it from the case law. They presented them sua sponte. They were not submitted by the government. Okay. Unless there are any questions, we'll ---- I have one final question for you, Your Honor. Yes, Your Honor. Your office is responsible for making the charging decisions, correct? Yes, Your Honor. Any problem with having charged Ms. Lopez with attempt? We could have, Your Honor. That would have solved all of this, would it not? Well, I think that what we were doing was relying on Ramirez-Martinez, which we accepted as being the controlling precedent. Why don't you just answer the question? The question is, would this have solved everything? You know, just answer the question. I don't know, Your Honor. I don't know, because I believe that our understanding that attempt would not address it, that aiding and abetting would better address it based upon our understanding of Ramirez-Martinez. This statute is written in terms of attempt. It is a violation if you simply attempt to bring someone to the United States. So I ---- But this Court interpreted the statute in Ramirez-Martinez, and we are following that precedent. Okay. Thank you, Your Honor. All right. Mr. Hubachek, do you have anything else? We'll give you a minute for rebuttal. Just very briefly, Your Honor. Oh, you have more than two minutes. Go ahead. You can use it all up. Thank you, Your Honor. I just want to clarify that the paragraph that Mr. Tenorio discussed in Ramirez-Martinez, the paragraph that he read from about the discussion of continuing offenses was solely a description of what the government's arguments were. Nothing in Ramirez-Martinez holds that it's a continuing offense as opposed to an offense that's not complete. I mean, if the one paragraph that I have been arguing against is a holding, it says only that the offense is not complete. There's no discussion of continuing offense at all in that paragraph. And the Supreme Court has set out some very demanding standards for determining whether or not an offense is a continuing offense in the Toosie case, and there's no discussion of that and no reason to believe the statute would qualify under that. Unless Your Honor has any other questions, that was the only additional point that I wanted to make. Oh, one thing. I did put an extra not in the jury instruction when I quoted it in my brief, and I saw that last night. So Your Honor read it from the ER. That's the correct version. Mine has a mistake in it. Thank you, Your Honors. Thank you. Cases are able to stand submitted. We'll take a break. Take a recess.
judges: Kozinski, Gould. Martinez